# Estate of Eliza L. Kennedy, deceased.  Appeal of William L. Kennedy.

*Will—Life estate—Condition—Security by life tenant.*

Testatrix by a will in the form of a letter directed as follows: "My two sons W. and F. will share alike after except $2,000 that F. owes my estate without interest, if neither of my sons have children the principal will come back to C.'s children. C. will get her full share." After the will was written, but before testatrix died, F. married and had one child, which was living at testatrix's death. *Held*, (1) that testatrix intended to attach a condition to the share bequeathed to each of her sons respectively; (2) that as to F.'s share the condition was fulfilled by the birth of a child which survived testatrix; (3) that as to W.'s share the condition remained unfulfilled, and his bequest could become absolute only upon the birth of a child to him; (4) that W. should be required to give security in accordance with the acts of April 17, 1869, and May 17, 1871, for the protection of the contingent interests in favor of C.'s children.

Argued Feb. 6, 1899.  Appeal, No. 120, Jan. T., 1898, by William L. Kennedy, from decree of O. C. Chester Co., dis-

missing exceptions to auditor's report.   Before STERRETT, C. J.,
GREEN, McCOLLUM, DEAN and FELL, JJ.   Affirmed.

Exceptions to report of auditor, Robert S. Waddell, Esq.

From the record it appeared that testatrix died on April 26,
1896, leaving the following letter addressed to her children:

"May 9th, 1892.

"My Dear Children:—This is a piece of writing I hope you
will all be satisfied with, and carry out as I desire it should be.
I have not very much to leave you, but what I have I hope you
will take care of and put to good use.   You will first give to
the Presbyterian Church of Phœnixville, $500, to be used for
the church, not to pay the minister's salary.   You will also give
to my niece, Fanny Caulhower, $200 for a little pin money,
then my daughter, Jennie Talbot, will get $500 in money, and
the rest of her share will be put at interest for her lifetime, then
to go to the rest of the children.   My two sons William Ken-
nedy and Fred. Kennedy will share alike after except $2,000
that Fred. owes my estate without interest, if neither of my
sons have children the principal will come back to Clara's chil-
dren, Clara will get her full share.   My two daughters will
have the management of the things in the house, do not have
any disturbance, do all things peaceful and quiet, each one can
have something if they wish.   Papa's gold watch will go to
little John Robb, do not scatter my clothing around, what you
don't want burn, you will have sale of my household goods all
that is worth selling put in good order, the rest burn.   My son
Fred. will settle up my estate he must not charge anything as
he has paid no interest all these years.

"ELIZA L. KENNEDY."

At the time of the writing of the will the children of the tes-
tatrix were four, viz: Jennie K. Talbot, a widow without chil-
dren, William L. Kennedy married but without children, Fred.
S. Kennedy unmarried, Clara L. Robb, married having children;
the family relations of the children were unaltered at the time
of the testatrix's death, with the exception that Fred. S. Ken-
nedy had married and had one child living.

The contention of the appellant is that he takes his share ab-
solutely, because the condition on which it was to be divested

and go to Clara's children has not happened by reason of the birth of a child to Fred. which survived the testatrix.

The auditor, Robt. S. Waddell, Esq., after discussing Aurelia Smith's Estate, 23 Pa. 9, Mengel's App., 61 Pa. 248, Biddle's App., 69 Pa. 194, Fitzwater's App., 94 Pa. 141, Morrison v. Truby, 145 Pa. 150, and Bedford's App., 40 Pa. 16, proceeds:

In the will under our consideration, the intention of the testatrix is not ambiguous.  She directs that her sons shall share alike, and if neither have children the principal shall go over to her grandchildren.  Before the limitation over to the grandchildren can be defeated by an arbitrary rule of law, it ought to appear that the testatrix intended that the word "children" was to be used in the sense of "issue," and the phrase "if neither have children" is to be used in the sense of "if either die without issue," so that the bequest would come within the rule, that when a bequest of personalty is made absolutely in the first instance, and it is provided further that, in the event of death or death without issue, such provision shall be taken to mean death or death without issue in the testator's lifetime: Mickley's App., 92 Pa. 514.

Your auditor is of opinion that the language used will not bear this interpretation.  The testatrix does not provide for the limitation over on the death of her sons without issue, but the limitation is in the event of neither of them having children. This is very different from dying without issue.  The reason for the rule of a legacy vesting absolutely in the first taker provided he die without issue is that as the testator speaks of death, the most certain of all things, as a contingency, it can only be made contingent by reference to its taking place before a particular period, and as no period of time is mentioned in the will, it is necessarily presumed that the period of time to which the testator refers is the period of possession or enjoyment, that is, his own death, when the legacy will take effect and the subsequent limitation is introduced to prevent a lapse of the legacy in case the legatee did not survive the testator. There is no reason for the rule in the present will.  The contingency "if neither of them have children" is not like death, the most certain of all things, but is a contingency which may or may not happen at any time, and when it does happen the

legacy becomes absolute.  To hold otherwise would be to defeat the intention of the testatrix, and give a meaning to her language which she did not intend.  Another interpretation of the clause in question argued by counsel representing William Kennedy was that Fred. having had a child born, the condition attached to the legacy was performed as to both sons, and each took an absolute legacy without any limitation over to the children of Clara.  That the child born to Fred. performed the condition as to William, and therefore he should take his share in the distribution of his mother's estate without being required to give security, to secure the legatees in remainder.

In Key v. Key, 4 D. M. & G. 73 (Hawkins on Wills, p. 4), BRUCE, L. J., says: "In common with all men I must acknowledge there are many cases on the construction of documents, in which the spirit is strong enough to overcome the letter; cases in which it is impossible for a reasonable being, upon a careful perusal of the instrument, not to be satisfied from its contents that a literal, a strict, or an ordinary interpretation given to particular passages, would disappoint and defeat the intention with which the instrument read as a whole, persuades and convinces him that it was framed.  A man so convinced is authorized and bound to construe the writing accordingly."  Lord ST. LEONARDS in Grey v. Pearson, 6 H. L. C. 61 (Hawkins on Wills, p. 6), says : "Nobody is more disposed than I am to abide by clear words, and to give to them their natural and grammatical meaning; but I never did and I never can come to the conclusion that the words of a will cannot admit of modification according to the real intention of the testator, as you find it from other expressions or from the whole context of the will.  It is difficult to lay down any abstract rule on the subject, but where I find the intention, and I find words pointing out the intention and that, if I give to the words their simple meaning according to grammar and according to their plain prima facie import, I defeat the intention of the testator, I hold that I am bound, by every rule of law and equity, to see whether I cannot give to them, by natural construction, an import which will effectuate and not defeat the intention."  Lord KINGSDOWN, in Towns v. Wentworth, 11 M. P. C. 526, says, "In order to determine the meaning of a will. the court must read the language of the testator in the sense which it appears he himself

attached to the expressions which he has used, with this qualification that, when a rule of law has affixed a certain determinate meaning to technical expressions, that meaning must be given to them, unless the testator has by his will excluded, beyond all doubt, such construction."

From the above authorities, the rule seems to be, that we must be governed by the situation of the parties and the purpose of the testatrix; language which in one will may be held to indicate a certain intention, may in another, from differences in the context and the attending conditions receive a different interpretation. At the time the will was written neither son of the testatrix had children. William was married and had no children. Fred. was unmarried, but married during the lifetime of his mother, and had a child born on November 11, 1895, and this child is now living. Their remaining in the condition which existed when the testatrix wrote her will was the thought in the testatrix's mind. It dictated her language. It was the cause of her qualification of the absolute gift. She intends to qualify their shares in the contingency of their not having children. It was a vested legacy subject to be divested by the non-performance of the condition. Each son was to have a like share in the amount for distribution in his mother's estate. Her intention, therefore, in the opinion of your auditor, was to attach a condition to each share, not to allow the performance of the condition by one son to defeat the limitation to her grand-children. "If neither of my sons have children the principal will come back to Clara's children. Clara will get her full share." The word is used by the testatrix as synonymous with share. She did not use it in the sense of a sum of money placed at interest. She does not bequeath them the interest arising from a certain principal. Each is to share alike, that is, each is to have an equal share in her estate. It refers to share and share alike, so that her meaning would be that the principal— the share which each son was to receive under her will—was to come back to Clara's children, unless the condition attached to the share of each son was performed. The intention of the testatrix, as gathered from the will, reading the word principal as share, would be, in the judgment of your auditor, "if neither my son Fred. nor my son William have children, the share of him having no children will come back to Clara's children."

In Seull's Estate, 9 Pa. C. C. R. 347, the testator directed as follows : " In case of the decease of either of my said children, whether during my lifetime or after my decease, without leaving children or issue of a deceased child——the part or share—— intended for such children so dying and his or her children—— shall go to my surviving children;" held, that the interest of a child surviving the testator was vested subject to becoming divested by the death of such child without leaving children or issue of a deceased child.   PENROSE, J., said : " Had the limitation following the absolute gift to the exceptant been, as in Fitzwater's Appeal, 94 Pa. 141, dependent simply upon a dying without leaving children, etc., with no qualification as to the time of so doing, it would undoubtedly follow, under a rule of construction well settled in this state, that a dying without children, etc., in the lifetime of the testator was intended and that the legatee who survived him was entitled to an absolute, indefeasible estate.    But the rule is one of construction merely and its application to the present case is made impossible by the express terms of the will, viz : in case of the decease of either ——of my said——children——whether during my lifetime or after my decease without leaving children or issue of a deceased child——the part or share intended for such children so dying and his or her children——shall go to—— my surviving children, etc., etc.   This leaves no room for interpretation ; and as it is not and could not be pretended that the limitation over is void for remoteness, it was proper in awarding distribution to require security for the protection of the contingent interests.    The interest of the first taker is vested, subject to becoming divested upon the happening of the contingencies provided for by the will."

We therefore hold that the share bequeathed to William Kennedy is conditional, and can only become absolute upon his having a child.    He will therefore, be required to give security for the protection of the contingent interests, to wit: Clara's children, in accordance with the acts of April 17, 1869, and May 17, 1871.

The distribution was to Fred. S. Kennedy absolutely $5,548.50, and to William L. Kennedy to be paid upon his giving security in accordance with the above report, $5,548.50.

Exceptions to the auditor's report were dismissed by the court.

*Error assigned* was in dismissing exceptions to auditor's re-report.

*I. Newton Wynn* and *Thomas W. Pierce*, for appellant.—The condition upon which the interest is to be divested is "if neither of my sons have children." This condition is single and, inasmuch as a child has been born to Fred. S. Kennedy, cannot happen so as to divest the legacy given to the sons: Handcock's Appeal, 112 Pa. 532; 2 Jarman on Wills, *13; 1 Roper on Legacies, 619; Skey v. Barnes, 3 Merivale, 334; Templeman v. Warrington, 13 Simons, 267 ; Mackell v. Winter, 3 Vesey, Jr. 236.

*H. H. Gilkyson*, for appellee, cited Pond v. Bergh, 10 Paige, 140; Latham v. Latham, 30 Iowa, 297; 1 Jarman on Wills (5th ed.), 437; Nebinger's Estate, 6 Dist. Rep. 340; Wolfe v. Allcock, 1 B. & Ald. 137.

PER CURIAM, February 27, 1899 :

In her last will, written in the form of a letter addressed to her children, the testatrix, Eliza L. Kennedy, provided, inter alia, as follows :

"My two sons William Kennedy and Fred. Kennedy will share alike after except $2,000 that Fred. owes my estate without interest, if neither of my sons have children the principal will come back to Clara's children.   Clara will get her full share."

At the date of the will the testatrix had four children, viz : Jennie K. Talbot, a widow without children, William L. Kennedy, married but without issue, Frederick S. Kennedy, unmarried, and Clara L. Robb, married and having children. The only change that occurred in the respective family relations of these children, between the date of the will and the decease of the testatrix, was the marriage of her son Fred. and the birth of a child, to him, living at the latter date.

In construing the clause above quoted, the learned auditor and court below held that the testatrix intended to attach a

condition to the share bequeathed to each of her sons respectively; that, as to the share of Frederick, the condition was fulfilled by the birth of a child to him which survived the testatrix; but, as to her son William's share, the condition remained unfulfilled, and his bequest can become absolute only upon the birth of a child to him.   He was therefore required to give security, in accordance with the acts of April 17, 1869 and May 17, 1871, for the protection of the contingent interests in favor of Clara L. Robb's children.

For reasons given by the auditor, we think the construction thus given to the clause in question is correct, and in harmony with the general scheme of the testatrix, as disclosed by her will.   We find nothing in the case that requires further comment.   The distribution having been made upon a correct basis, it follows that neither of the specifications of error can be sustained.

Decree affirmed and appeal dismissed at appellant's costs.